FILED
JUL 1 3 2016
MARILYN A. CRAFT Court Clerk
_____ Deputy

FILED
SEP 2 8 2016
Clerk, U.S. District Court
District Of Montana
Helena

MONTANA FIFTH JUDICIAL DISTRICT COURT, JEFFERSON COUNTY

| | | |
|---|---|---|
| HEATHER AND COLTON MORRIS, Individually and on Behalf of Their Minor Children, J.M., W.M. and M.M., | ) ) ) ) | Cause No. DV-2015-88<br><br>W-16-43-H-CCL |
| Plaintiffs, | ) ) | **ORDER DENYING MOTION TO DISMISS** |
| v. | ) ) | |
| LUMBER LIQUIDATORS, INC., | ) ) | |
| Defendant. | ) ) | |

Defendant Lumber Liquidators, Inc. ("LLI") filed a motion to dismiss asserting lack of personal jurisdiction. The parties briefed the motion. The Court held that Montana's long-arm provision applied to LLI's alleged conduct but a fact dispute precluded a ruling on whether jurisdiction would violate due process. The parties appeared in court for an evidentiary hearing and thereafter submitted supplemental briefs.

## BACKGROUND

LLI is a Delaware Corporation with its principal place of business in Virginia. (Compl., ¶ 3). The Morrises reside in Whitehall, Montana. (Compl., ¶ 1). The Morrises purchased flooring from LLI on July 17, 2014. (Compl., ¶ 6). After installing the flooring in their home, the Morrises allege that their children experienced headaches and trouble breathing. (Compl., ¶¶ 10-11). The Morrises allege that they performed a test which indicated "elevated" levels of

formaldehyde. (Compl., ¶ 13). After complaining to LLI, LLI sent a formaldehyde test kit directly to the Morrises' home in Montana. (Compl., ¶ 14).

The Complaint originally alleged that Morrises purchased the flooring "at the Home Depot in Idaho Falls." (Compl., ¶ 6). However, the Morrises later submitted an affidavit recanting this allegation and asserting that they actually "ordered the product online" and had it "shipped…from the Idaho Lumber Liquidators location directly to [their] home in Whitehall, Montana." (Morris Aff., ¶ 5). LLI disputed this allegation. LLI maintained that it had "no[] record of a direct sale to the Morrises." (Reply Br. at 6). The parties appeared for a hearing to resolve this factual dispute.

At the hearing, Morrises introduced a Uniform Straight Bill of Lading identifying "Lumber Liquidators Inc" as the shipper and "Barbara Wass" as the recipient. (May 4, 2016 Hrg. Exh. 2). Barbara Wass is plaintiff Colton Morris's mother. The Morrises explained that they put the purchase on Wass's credit card and thus listed her as the recipient, even though LLI delivered the flooring directly to the Morrises' home. The Bill of Lading describes the items shipped as "laminate flooring" and lists a delivery address of "370 Highway 55, Whitehall, Montana." (Exh. 2).

The Morrises also introduced into evidence a copy of an e-mail communication they received from LLI disclosing the results of the formaldehyde test. (May 4, 2016 Hrg. Exh. 4). In the e-mail, LLI's "customer team" states, "[y]our results show that formaldehyde levels in your home fall within the World Health Organization's (WHO) guidelines for acceptable indoor air formaldehyde concentrations." (Exh. 4 at 1). The communication went on to state that "it does not appear that your floor is contributing significantly to any abnormal exposure to formaldehyde." (Exh. 4 at 1).

## DISCUSSION

When confronted with a motion to dismiss for lack of personal jurisdiction, Montana courts follow a two-step process. *Milky Whey, Inc. v. Dairy Partners, Inc.*, 2015 MT 18, ¶ 18, 378 Mont. 75, 342 P.3d 13. The Court must first determine whether Montana's long-arm provision confers jurisdiction. *Id.* If so, the Court then determines whether the exercise of jurisdiction complies with due process. *Id.* The Court already concluded that Montana's long-arm statute confers jurisdiction over LLI. *See* Order Denying Motion and Setting Hearing (April 13, 2016). Accordingly, the Court moves directly to due process considerations.

Due process requires the existence of "minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945). Personal jurisdiction comes in two forms: general and specific. A court with general jurisdiction may adjudicate any claims against the defendant—even those that occurred entirely in a different state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796, 803 (2011). However, general jurisdiction exists only when the defendant's contacts with the forum state are so "continuous and systematic" as to render the defendant "essentially at home" in the forum state. *Goodyear*, 564 U.S. at 919. Neither party argues that general jurisdiction exists in this case.

The parties' dispute focuses on whether this Court has specific jurisdiction. Specific jurisdiction exists when an out-of-state defendant "submits to the judicial power of an otherwise foreign sovereign" and gives the court power to adjudicate claims "arising out of or related to the defendant's contacts with the forum." *J. McIntyre Mach. Ltd., Inc. v. Nicastro*, 564 U.S. 873, 881, 131 S. Ct. 2780, 2788, 180 L. Ed. 2d 765, 775 (2011). "[R]andom, isolated, or fortuitous"

contacts will not suffice. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478, 79 L. Ed. 2d 790, 797 (1984). However, "even a single act can support jurisdiction" if it has a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n. 18, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528, 543 (1985). The quantity of the defendant's contacts does not control. Instead, the inquiry focuses on whether by engaging in activities in the forum state the defendant has "purposefully avail[ed] itself of the privilege of conducting activities" in that state, thereby "invoking the benefits and protections of its laws." *Nicastro*, 564 U.S. at 881.

## LLI Purposefully Availed Itself of Montana Law

Disputes about specific jurisdiction frequently arise in cases where a product manufactured in a foreign state causes harm in the forum state. The United States Supreme Court first confronted this situation in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490, (1980). The plaintiff had purchased a car in New York and attempted to sue the dealer and distributor in Oklahoma, where the accident occurred. *World-Wide*, 444 U.S. at 295. The Court rejected this attempt, holding that "the mere unilateral activity" of the plaintiff in transporting the product across state lines "cannot satisfy the requirement of contact with the forum State." *Id.* at 298. Accordingly, Oklahoma courts lacked jurisdiction to adjudicate the dispute. The Court rejected a plaintiff's attempt to establish jurisdiction on "the fortuitous circumstance" that a product purchased in one state happened to cause harm in another. *Id.* at 288.

Subsequent cases have attempted to refine this holding but have resulted in plurality decisions that provide little clarity. In *Asahi Metal and Industry Co. v. Superior Court*, a Taiwanese tire manufacturer filed a cross-claim against its Japanese supplier of the tire valves in

a case arising out of an automobile accident that occurred in California. 480 U.S. 102, 106, 107 S. Ct. 1026, 1029, 94 L. Ed. 2d 92, 100 (1987). Although the valve supplier knew its product would eventually be distributed throughout the United States and California, the Supreme Court held that California courts lacked personal jurisdiction over the Japanese corporation. *Id.* at 114. For a four-justice plurality, Justice O'Connor wrote that merely placing a product "into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. The plurality held that the plaintiff must show "something more" to establish that the defendant purposefully invoked the laws of California. *Id.* Justices Brennan and Stevens agreed that personal jurisdiction did not exist but would have rested that holding on due process rather than the Court's stream of commerce theory. *Id.* at 116-17.

In *Nicastro*, a New Jersey resident brought a products liability suit in New Jersey state court for compensation for injuries he received while operating a product manufactured by a British Corporation. *Nicastro*, 564 U.S. at 878. The machine at issue reached New Jersey through an American distributor. *Id.* at 878. The manufacturer exercised no control over the distributor's sales and never shipped any of its products directly into New Jersey. *Id.* For a four-justice plurality, Justice Kennedy conducted a detailed analysis attempting to harmonize *Asahi* and *World-Wide Volkswagen*. *Id.* at 879-885. The plurality ultimately concluded that New Jersey courts lacked jurisdiction because the plaintiff failed to establish that the manufacturer "engaged in conduct purposefully directed at New Jersey." *Id.* at 886. Justices Breyer and Alito would have reached the same conclusion based solely on precedent and without making any "broad pronouncements that refashion basic jurisdictional rules." *Id.* at 887, 890.

Although these cases failed to establish a majority position on the "stream of commerce" theory, none of them involved a situation where the defendant shipped its product directly into

the forum state. Unlike a product that reaches the forum state through the "stream of commerce," a product that reaches the forum state by direct shipment from the defendant does not involve a "fortuitous circumstance" or "unilateral activity" by a third party. On the contrary, the defendant who ships his product directly into the forum state has knowingly engaged in conduct with the expectation that it will benefit from the protections of the forum state's laws. Thus, lower courts have held that a knowing shipment into the forum state suffices to confer personal jurisdiction, at least where the plaintiff and defendant exchanged communications regarding the purchase. *Heavy Iron Oilfield Servs., L.P. v. Mt. Equip. of N.M.*, No. 14-39, 2014 U.S. Dist. LEXIS 107648 (W.D. Pa., Aug. 6, 2014); *CMMC v. Salinas*, 929 S.W.2d 435 (Tex. 1996).

In *Heavy Iron*, for example, the plaintiff purchased oilfield equipment from the defendant, a New Mexico company, which shipped the equipment directly to plaintiff. *Heavy Iron*, 2014 U.S. Dist. LEXIS 107648, *2. The plaintiff sued in Pennsylvania, alleging the equipment failed to conform to industry standards. *Id.* at *3. The defendant argued that the court lacked personal jurisdiction because the defendant did not solicit business in Pennsylvania, direct any business activities toward Pennsylvania residents, or employ an agent in Pennsylvania. *Id.* at *8. In addition, the defendant emphasized that "it was Plaintiff that solicited business from Defendant in New Mexico." *Id.* at *8-9. The court held that a "singular contact with a forum state supports the exercise of specific jurisdiction over a defendant where the nature and the quality of the contact provides a substantial connection with the forum." *Id.* at *10-11. The court held that by "shipp[ing] the [equipment] to Plaintiff in Pennsylvania" the defendant "targeted" Pennsylvania and benefited from the protection of its laws and therefore should reasonably have anticipated being haled into court there. *Id.* at *10. Other courts have reached

the same result. *See, e.g., Xia Zhao v. Skinner Engine Co.*, No. 2:11-CV-07514-WY, 2012 U.S. Dist. LEXIS 160099, *19 (Nov. 8, 2012) (holding that single, knowing shipment of machine into the forum state sufficed to confer personal jurisdiction); *One World Botanicals v. Gulf Coast Nutritionals*, 987 F. Supp. 317 (D.N.J. 1997) (same).

At least one lower court has reached a different conclusion in a case where the plaintiff purchased the product through an intermediary. In *CMMC v. Salinas*, 929 S.W.2d 435 (Tex. 1996), for example, a Texas company contacted the manufacturer's regional distributor about purchasing a machine. The distributor ordered the machine from an out-of-state manufacturer and had the manufacturer ship the machine directly to the company in Texas. An employee sustained injuries while operating the machine and sued in Texas state court. Observing that the Texas company "never had any contacts at all with [the manufacturer]," the Court held that Texas lacked personal jurisdiction over the manufacturer. *Id.* at 339-440. These facts obviously differ from this case.

After receiving an order from Morrises, LLI shipped its product directly into Montana. Unlike the defendants in *Asahi*, *Nicastro*, or *CMMC*, the defendant did not use an intermediary or distributor. LLI cannot argue that the "unilateral activity" of some third party caused their product to arrive in this state. LLI was not required to guess whether its product could eventually reach Montana through some nonspecific "stream of commerce." LLI knew that its product would reach Montana and that it would receive the benefits and protections of Montana law. As in *Heavy Iron*, this conduct suffices to establish that LLI targeted Montana and should reasonably have anticipated defending a suit in this state. In addition, when the Morrises expressed concern about the product causing illness, LLI sent a test kit and communicated the results directly to the Morrises.

The Montana Supreme Court has not had occasion to rule in a case involving a single shipment. However, in *B.T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286, 323 Mont. 308, 100 P.3d 127, the Court relied heavily on the fact that the defendant "knowingly shipped its product into Montana on a number of occasions" in holding that the requisite contacts existed for Montana to assert personal jurisdiction. *B.T. Metal Works*, ¶ 36. It is reasonable to conclude that the Montana Supreme Court would apply similar reasoning in a single shipment case in light of the United States Supreme Court's clear holding that "a single act can support jurisdiction." *Burger King*, 471 U.S. at 476 n. 18 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)).

LLI purposefully availed itself of the privilege of conducting business in Montana when it knowingly shipped its product into this state.

### The Remaining Elements Required for Personal Jurisdiction Exist

Two additional elements must exist: (1) the plaintiff's claim must arise out of or result from the defendant's forum-related activities and (2) the exercise of jurisdiction must be reasonable. *Bunch v. Lancair Int'l Inc.*, 2009 MT 29, ¶ 19, 349 Mont. 144, 202 P.3d 784 (citing *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)).

As to the first requirement, the very shipment of product that confers jurisdiction over LLI allegedly caused the Morrises' injuries. Thus, it is clear that the Morrises claim "arises out of or results from" LLI's business activities in Montana.

As to the second requirement, "once the plaintiff demonstrates that the...defendant has purposefully availed itself of the privilege of conducting activities in Montana, a presumption of reasonableness arises, which a defendant can overcome only by presenting a compelling case

that jurisdiction would be unreasonable." *Bunch*, ¶ 41. The Montana Supreme Court has set forth seven nonexclusive factors for district courts to consider:

1. The extent of defendant's purposeful interjection into Montana;

2. The burden on defendant of defending in Montana;

3. The extent of the conflict with the sovereignty of defendant's state;

4. Montana's interest in adjudicating the dispute;

5. The most efficient resolution of the controversy;

6. The importance of Montana to plaintiff's interest in convenient and effective relief; and

7. The existence of an alternative forum.

*Simmons Oil Corp. v. Holly Corp.*, 244 Mont. 75, 87-88, 796 P.2d 189, 196-97 (1990). Only in "rare cases" will an exercise of personal jurisdiction over a defendant who has purposefully availed itself of the privilege of conducting activities in the forum state fail the reasonableness test. *Asahi*, 480 U.S. at 116 (Brennan, J., concurring); *see also Nielsen Idaho Tool & Eng'g Corp. v. Scepter Corp.*, No. 1:11-cv-00058-BLW, 2011 U.S. Dist. LEXIS 107870, *15 (D. Idaho 2011).

LLI relies on two factors to argue that the exercise of jurisdiction in this case is unreasonable. First, LLI contends that it "did not purposefully interject itself into Montana." (Opening Br. at 10). As already discussed, LLI purposefully availed itself of the privilege of conducting business in Montana when it sent its product and a test kit into Montana and communicated directly with customers in Montana. This argument is not persuasive and need not be reviewed again.

Second, LLI argues that the federal Panel on Multi-District Litigation has consolidated similar cases in the federal courts for pretrial proceedings pursuant to 28 U.S.C. § 1407.

(Opening Br. at 10). Morrises suggest that this case should likewise be resolved in federal court. However, a federal court has jurisdiction over a defendant only if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Rule 4(k), Fed. R. Civ. P. If this Court lacks jurisdiction, the federal court for the district of Montana lacks jurisdiction. If accepted, LLI's argument inevitably leads to the conclusion that Morrises must file their complaint in Virginia.[1] Such a forum would be highly inconvenient to the Morrises.

LLI has not explained why its burden of defending this case is unreasonable. Nor has LLI identified any conflict with the sovereignty of its home state. Montana has an interest in adjudicating the rights of consumers who suffered injuries in this state. LLI has not put forth any argument or evidence sufficient to overcome the presumption of reasonableness arising from LLI's purposeful availment of the benefits and protections of Montana law. This is not one of those "rare cases" in which a defendant who purposefully availed itself of the privilege of conducting activities in the forum state can establish that asserting jurisdiction over it is nevertheless unreasonable.

## CONCLUSION

This case does not involve an unsuspecting defendant whose product finds its way into the forum state through and uncertain channels of the "stream of commerce." When LLI sent the product directly to Montana, it purposefully availed itself of the benefits and protections of Montana law and therefore should reasonably have anticipated being required to appear in court in this state. LLI's motion to dismiss should be denied.

---

[1] In addition, Morrises claim an amount less than the amount required to invoke federal diversity jurisdiction in federal court. The complaint requests damages in an amount "that does not exceed $74,999." (Compl., at 11). The amount in controversy required for diversity jurisdiction is $75,000. 28 U.S.C. § 1332.

**NOW THEREFORE IT IS HEREBY ORDERED** as follows:

1. LLI's motion to dismiss is denied.

2. The Clerk of Court will please file this order and distribute a copy to the parties.

Dated: July 11, 2016

/s/ Loren Tucker
LOREN TUCKER
District Judge

c : Brian J. Miller
    Gary L. Walton